Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000477
21-JUN-2019
08:06 AM

NO. CAAP-18-0000477

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


WILMINGTON SAVINGS FUND SOCIETY, FSB,
DOING BUSINESS AS CHRISTIANA TRUST, NOT IN ITS
INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR
BCAT 2015-14ATT, Plaintiff-Appellee,
v.
TORU AKEHI, Defendant-Appellant,
and
JOHN DOES 1-20; JANE DOES 1-20; DOE CORPORATIONS 1-20;
DOE ENTITIES 1-20; AND DOE GOVERNMENTAL UNITS 1-20,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-0337)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Defendant-Appellant Toru Akehi (**Akehi**) appeals from the

May 9, 2018 Judgment (**Judgment**), which was entered by the Circuit

Court of the First Circuit (**Circuit Court**),[1] in favor of

Plaintiff-Appellee Wilmington Savings Fund Society, FSB

(**Wilmington**) and against Akehi.  Akehi also challenges the

Circuit Court's May 9, 2018 Findings of Fact, Conclusions of Law

and Order Granting Plaintiff's Motion for Summary Judgment

_____

[1]     The Honorable Keith K. Hiraoka presided.

Against All Defendants and for Interlocutory Decree of Foreclosure (**Summary Judgment Order**).

Akehi raises two points of error on appeal, contending that the Circuit Court erred in granting summary judgment in favor of Wilmington because: (1) Wilmington failed to meet its burden of establishing standing; and (2) Wilmington failed to establish that Akehi had been provided proper notice of the alleged default.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Akehi's points of error as follows:

(1) Akehi contends that Wilmington has failed to establish that its predecessor-in-interest, Bank of America, N.A., successor by merger to BAC Home Loan Servicing, LP FKA Countrywide Home Loans Servicing, LP (**Bank of America**), was entitled to enforce the subject note (**Note**) at the time that Bank of America filed the Complaint in this case. Specifically, Akehi argues that the statement in the Declaration of Indebtedness and on Prior Business Records by Foreclosure Manager, Haley Pope (**Pope**), of Selene, the loan servicer for Wilmington (**Pope Declaration**), that "[Bank of America] had possession of the original Note, indorsed to blank, prior to the date the Complaint was filed," does not establish that Bank of America possessed the Note at the time the Complaint was filed. (Emphasis added).

As this court has previously recognized:

> In Reyes-Toledo, the supreme court held that the foreclosing plaintiff must establish standing or entitlement

2

to enforce the subject note at the time the action was commenced. 139 Hawai'i at 367-71, 390 P.3d at 1254-58. The supreme court stated, *inter alia*, that a foreclosing plaintiff must typically "prove the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice." Id. at 367, 390 P.3d at 1254 (citing Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (1982)). Furthermore, "[a] foreclosing plaintiff must also prove its entitlement to enforce the note and mortgage." Id. (citations omitted). . . . In concluding that the foreclosing bank failed to satisfy its burden as the movant for summary judgment, the court reasoned, "[a]lthough Bank of America produced evidence that it possessed the blank-indorsed Note at the time it sought summary judgment, a material question of fact exists as to whether Bank of America possessed the Note, or was otherwise the holder, **at the time it brought the foreclosure action**." Id. at 370, 390 P.3d at 1257.

HSBC Bank USA, Nat'l Ass'n v. Moore, 144 Hawai'i 49, 53, 434 P.3d 1244, 1248 (App. 2018) (emphasis added).

Here, the Pope Declaration does not aver that Bank of America possessed the Note at the time the Complaint was filed, but merely states that Bank of America possessed the Note "prior" to the filing of the Complaint. It therefore does not establish that Bank of America continued to possess the Note on the date the Complaint was filed, and there is no other evidence presented as to Bank of America's possession of the Note. Accordingly, Wilmington failed to establish Bank of America's standing to bring the foreclosure action against Akehi in the first instance, and the Circuit Court erred in granting Wilmington's motion for summary judgment.[2]

Akehi also contends that Wilmington has not produced any admissible evidence that it possessed the Note at the time it filed its motion for summary judgment. The Pope Declaration

---

[2] The Circuit Court also appears to have erroneously determined that "Plaintiff [*i.e.*, Wilmington] was the holder of the Note at the time the Complaint was filed," since it is undisputed that Bank of America filed the Complaint and there is nothing in the record to suggest that Wilmington was the holder of the Note at that time.

3

states, *inter alia*, that "Plaintiff [*i.e.*, Wilmington] has possession of the Note." Thus, the issue appears to be whether Wilmington's possession of the Note can be established through the Pope Declaration.

In its motion for summary judgment, Wilmington asserted that it is "the holder of the Note [and] is entitled to foreclose the Mortgage upon the Borrower's default under the terms of the Note." In support of this assertion, Wilmington presented the Pope Declaration with attachments, including the Note. We must consider, therefore, whether the attached Note is admissible through the Pope Declaration as evidence of Wilmington's standing to enforce the Note. See, e.g., U.S. Bank N.A. v. Mattos, 140 Hawaiʻi 26, 30, 398 P.3d 615, 619 (2017).

With attachments, including a copy of the Note, Wilmington presented the Pope Declaration, which reads in pertinent part:

> 2. Selene maintains records for the loan in its capacity as [Wilmington]'s servicer. As part of my job responsibilities for Selene, I am familiar with the type of records maintained by Selene in connection with the Loan. As such, I am authorized to make this Declaration.
>
> 3. Selene is the current loan servicer for [Wilmington] and acts as the exclusive representative and agent of [Wilmington] in the servicing and administering of mortgage loans referred to Selene, including the Loan being foreclosed in this action.
>
> 4. The information in this Declaration is taken from Selene's business records. I have personal knowledge of Selene's procedures for creating these records. They are: (a) made at or near the time of the occurrence of the matters recorded by persons with knowledge of the information in the business record, or from information transmitted by persons with knowledge; (b) kept in the course of Selene's regularly conducted business activities; and (c) created by Selene as a regular practice.
>
> 5. On or about 02/01/2007, [Akehi], for value received, duly made and executed a Monthly Adjustable Rate PayOption Note ("Note") in the amount of $1,950,000.00. A

4

true and correct copy of the original Note is attached as Exhibit "1" and is incorporated herein by reference.

6. [Wilmington] has possession of the Note with standing to prosecute the instant action and the right to foreclose the subject Mortgage. The Note has been indorsed to Blank.

. . . .

17. The owner of the Note and Mortgage for a particular mortgage loan is commonly referred to in the loan servicing industry as the Investor. The Investor for this mortgage loan is [Wilmington].

18. Selene maintains all the day to day loan documents, records and accounting of payments on the Loan being foreclosed in this action including all documents and business records acquired by [Wilmington] when it purchased the subject mortgage loan.

19. Under the terms of Selene's servicing arrangement, [Wilmington] does not participate in, keep and maintain any of the day to day loan documents, inputting of accounting data, saving of business records and all communications with borrowers.

20. [Wilmington], as the Investor, has a passive role with the primary emphasis on tracking its return on investment. In terms of routine business records on the Loan, Selene acts as the sole custodian of [Wilmington]'s records.

. . . .

22. I have been in the mortgage loan servicing industry for 9 years. Based upon my occupational experience, I know that loan servicers follow an industry wide standard on how to keep and maintain business records on the loan services performed in their portfolio which recordkeeping is part of the regularly conducted activity of loan servicers. The only difference between loan servicers is the computer software used and the formatting of reports. The type of and regular maintenance of loan information including the accounting under generally accepted principles for each mortgage loan is standard and computerized.

. . . .

24. In addition to logging payments received, loan servicers engage in the regularly conducted activity of recording and maintaining records of all disbursements made on each mortgage loan for all sums advanced as authorized for payment under the note and mortgage.

25. Aside from payments and disbursements, loan servicers as part of their regularly conducted activity send correspondence to borrowers on mortgage loan such as payment adjustments, responses to borrower inquiries, preparation and sending of default notices.

26. Finally, the loan servicer records, maintains and takes custody of all such daily business records and all loan documents, including taking possession of the note and mortgage records on behalf of the Investor.

5

. . . .

30. The prior loan servicer for this mortgage loan was Ocwen Loan Servicing LLC ("Prior Servicer")[(Ocwen)].

31. The loan servicer prior to Ocwen Loan Servicing LLC was Bank of America, N.A. ("Prior Prior Servicer").

32. Upon becoming [Wilmington]'s loan servicer, Selene took custody and control of loan documents and business records of [Ocwen] and incorporated all such records into the business records of Selene.

33. Upon becoming [Wilmington]'s loan servicer, Selene also took custody and control of loan documents and business records of [Bank of America] and incorporated all such records into the business records of Selene.

34. Before [Ocwen's] and [Bank of America]'s records were incorporated into Selene's own business records, it conducted an independent check into [Ocwen's] and [Bank of America]'s records and found them in keeping with industry wide loan servicing standards and only integrated them into Selene's own business records after finding [Ocwen]'s records were made as part of a regularly conducted activity, met industry standards and determined to be trustworthy.

35. In performing its services to [Wilmington], Selene relies upon the accuracy of [Ocwen's] and [Bank of America]'s records and those records are now a part of and used for all purposes in the conduct of Selene's regularly conducted activity of keeping and maintaining its own business records.

36. [Ocwen's] and [Bank of America]'s records are regularly used and relied upon by Selene in all dealings with all the borrowers, in reporting all profit and loss on the mortgage loans to [Wilmington], in the preparation, filing and payment of income taxes dependant upon such information, and in evaluating Selene's own job performance.
. . . .

38. Selene did review and determine [Ocwen's] and [Bank of America]'s business records were trustworthy otherwise it would not have incorporated it into its own records.

The documents attached to Pope's declaration, including, *inter alia*, the Note, are admissible under the Hawai'i Rules of Evidence (**HRE**) Rule 803(b)(6) hearsay exception for records of regularly conducted activity only if she is a "custodian or other qualified witness" with respect to those

documents. HRE Rule 803(b)(6) (2016).[3] Pope did not aver that she was the custodian of records for either Selene or Wilmington. Therefore, the documents attached to her declaration are admissible under the HRE Rule 803(b)(6) hearsay exception only if she is a "qualified witness" with respect to those documents. Wells Fargo Bank, N.A. v. Behrendt, 142 Hawai'i 37, 45, 414 P.3d 89, 97 (2018); Mattos, 140 Hawai'i at 32, 398 P.3d at 621; Moore, 144 Hawai'i at 56, 434 P.3d at 1251.

It is unclear, however, from the Pope Declaration whether the Note attached to it is purported to be a record of Selene or of Wilmington. Paragraph 6 of the Pope Declaration represents that "[Wilmington] has possession of the Note." Nevertheless, Pope attests in paragraphs 18, 19, and 20, that Wilmington "does not participate in, keep and maintain any of the day to day loan documents" and that "[i]n terms of routine business records on the Loan, Selene acts as the sole custodian of [Wilmington]'s records," and maintains all documents including, *inter alia*, all documents and business records

---

[3]    HRE Rule 803(b)(6) provides:

**Rule 803 Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

   (6)    Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

acquired when Wilmington purchased the loan. Pope further avers in paragraph 26 that, as standard practice in the mortgage loan servicing industry, "the loan servicer records, maintains and takes custody of all such daily business records and all loan documents, <u>including taking possession of the note and mortgage records on behalf of the [lender]</u>." (Emphasis added). Thus, the Pope Declaration strongly suggests, but does not specifically state, that, as part of its duties as the loan servicer for Wilmington, Selene is the custodian of records for Wilmington and has possession of the Note. This appears to contradict the statement in paragraph 6 of the Declaration that Wilmington has possession of the Note.

Setting aside that contradiction for a moment, we consider Pope's averment that all of the loan documents related to the subject loan, from the time of the original transaction, have been received by Selene from Ocwen and Bank of America and incorporated into Selene's records. In <u>Behrendt</u>, the supreme court reiterated its holding in <u>Mattos</u> "that a witness may be qualified to provide the testimony required by HRE Rule 803(b)(6) even if the witness is not employed by the business that created the document or lacks direct, personal knowledge of how the document was created." <u>Behrendt</u>, 142 Hawai'i at 45, 414 P.3d at 97 (citing <u>Mattos</u>, 140 Hawai'i at 32, 398 P.3d at 621). Furthermore, "[t]here is no requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business." <u>Mattos</u>, 140 Hawai'i at 32, 398 P.3d at 621 (internal

8

quotation marks omitted; quoting <u>State v. Fitzwater</u>, 122 Hawai'i 354, 366, 227 P.3d 520, 532 (2010)). "The witness, however, must have enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business." <u>Behrendt</u>, 142 Hawai'i at 45, 414 P.3d at 97 (citing <u>Mattos</u>, 140 Hawai'i at 32, 398 P.3d at 621).

The <u>Behrendt</u> court also recognized that "[r]ecords received from another business and incorporated into the receiving business' records may in some circumstances be regarded as 'created' by the receiving business." <u>Id.</u> (citing <u>Mattos</u>, 140 Hawai'i at 32, 398 P.3d at 621). Thus, incorporated records are admissible under HRE Rule 803(b)(6) "when a custodian or qualified witness testifies that the documents were incorporated and kept in the normal course of business, that the incorporating business typically relies upon the accuracy of the contents of the documents, and the circumstances otherwise indicate the trustworthiness of the document." <u>Id.</u> (citing <u>Mattos</u>, 140 Hawai'i at 32, 398 P.3d at 621; <u>Fitzwater</u>, 122 Hawai'i at 367-68, 227 P.3d at 533-34).

Here, therefore, the incorporated loan documents would be admissible through the Pope Declaration, so long as (1) Pope is a "qualified witness" with respect to Selene's records; (2) she testifies that the documents were incorporated and kept in the normal course of business and that Selene typically relies upon the accuracy of the contents of the documents; and (3) the circumstances otherwise indicate the trustworthiness of the

documents. Id. Relevant to her status as a qualified witness with respect to Selene's records, Pope attests that she is "familiar with the type of records maintained by Selene in connection with the Loan," and "ha[s] personal knowledge of Selene's procedures for creating these records." See Mattos, 140 Hawai'i at 32, 398 P.3d at 621. Pope further avers, generally, that all loan documents and business records for Ocwen and Bank of America were received by and incorporated into the business records of Selene.[4] Pope also declares that Selene relies upon the accuracy of Ocwen's and Bank of America's records and that the records are now "a part of and used for all purposes in the conduct of Selene's regularly conducted activity of keeping and maintaining its own business records." Pope attested that Selene conducted an independent check into Ocwen's and Bank of America's records and found them in keeping with industry-wide loan servicing standards. On those bases, Selene determined the records to be trustworthy, for the purpose of its own business purposes and standards, prior to incorporating them into Selene's records. Thus, based on the entirety of the Pope Declaration, we conclude that Pope constituted a qualified witness with respect to loan documents incorporated into Selene's records from both Ocwen and Bank of America, and *but for* Pope's conflicting statements regarding the possession of the Note, it would appear that Pope could provide sufficient foundation to establish the

---

[4] In the Pope Declaration, Bank of America is initially designated as the "Original Plaintiff" but is subsequently designated and referred to as the "Prior Prior Servicer." We note that it would be helpful for Pope to employ a consistent moniker for Bank of America.

trustworthiness of Selene's records kept as Wilmington's custodian of records, including the Note.

Nevertheless, the Note was not admissible as a business record of Selene under HRE Rule 803(b)(6) because the lack of clarity as to the circumstance of the possession of the Note indicates a lack of trustworthiness in the record that is before us. On remand, if Selene does possess the Note as Wilmington's loan servicer and custodian of records, Pope must submit a new declaration or affidavit explaining why and how she averred both that Wilmington possessed the Note and that Selene was the sole custodian of all loan documents and records, apparently including the Note. In addition, if Selene has possession of the Note, Pope's new declaration or affidavit must be specific and clear as to Selene's possession of the Note that is at issue here and should not be phrased generically. See, e.g., Nationstar Mortg. LLC v. Kanahele, SCWC-16-0000319, 2019 WL 1931703, at *9-10 (Haw. May 1, 2019).

To the extent that Wilmington maintains its entitlement to enforce the Note on the basis that it (not Selene) possesses the original Note, then in addition to explaining how and why her declaration suggested that Selene possessed the Note, Pope must be established as a qualified witness as to Wilmington's own records.[5] The Pope Declaration states that the records of Ocwen (the prior servicer) and Bank of America (the prior note-holder

---

[5] We recognize that Pope may not, in fact, be a qualified witness as to Wilmington's records and that, if Wilmington has the Note, then a different custodian of records or qualified witness might be required. Even so, only Pope would have the personal knowledge required to explain the conflicting statements made in her first declaration. See Kanahele, 2019 WL 1931703, at *9.

11

and mortgagee) were incorporated into Selene's records, and that Selene's records were made and maintained in the regular course of Selene's business, but Pope does not aver that Wilmington's records were at any time incorporated into Selene's records or that Pope is familiar with Wilmington's record-keeping system. See Behrendt, 142 Hawaiʻi at 46, 414 P.3d at 98; Mattos, 140 Hawaiʻi at 32-33, 398 P.3d at 621-22.[6] Thus, the Pope Declaration fails to satisfy the foundational requirements to make Pope a qualified witness as to the records of Wilmington, including the Note. See Behrendt, 142 Hawaiʻi at 46, 414 P.3d at 98; Mattos, 140 Hawaiʻi at 32-33, 398 P.3d at 621-22. Because we cannot conclude that Pope was a qualified witness with respect to the Note attached to her declaration, she could not provide the foundation to admit it under HRE Rule 803(b)(6). The Circuit Court therefore erred in granting summary judgment to the extent it relied on the Note's admissibility under the business record exception to the hearsay rule to establish Wilmington's standing to enforce the Note.

(2) Akehi contends that Wilmington failed to establish that notice of default was properly provided to Akehi, thus failing to bring forward evidence of a necessary element for

---

[6]     Pope attests that "Selene maintains all the day to day loan documents, records and accounting of payments on the Loan being foreclosed in this action including all documents and business records acquired by [Wilmington] when it purchased the subject mortgage loan," and that "[i]n terms of routine business records on the Loan, Selene acts as the sole custodian of [Wilmington]'s records." However, given the contradictory statements in the Pope Declaration, depending on what part of that declaration is correct, it may be necessary for Pope or another declarant to establish his or her familiarity with Wilmington's record-keeping system. See Mattos, 140 Hawaiʻi at 33, 398 P.3d at 622 (holding that statements that the declarant "has access to and is familiar with" an entity's records do not establish familiarity with that entity's record-keeping system in order to render the declarant a qualified witness as to that entity's records).

foreclosure. Specifically, Akehi argues that Pope was not a qualified witness as to Bank of America's records and thus was unable to authenticate the notice of default attached to her declaration, which was purportedly sent to Akehi by Bank of America in 2011.

As discussed above, with some clarification, the averments set forth in the Pope Declaration might satisfy the foundational requirements of HRE Rule 803(b)(6) with respect to Bank of America's incorporated records and establish their trustworthiness. However, because of a contradiction between the Pope Declaration and the notice of default, as well as the contradiction discussed above, we cannot conclude that the notice is admissible through the Pope Declaration.

The Pope Declaration purports to authenticate Bank of America's Notice of Intent to Accelerate (**Notice of Default**) by averring that the "Written [Notice of Default] was given to [Akehi] of the default and of Plaintiff's [i.e., Wilmington's] intention to accelerate the loan if the default was not cured" and that "Plaintiff [i.e., Wilmington] exercised its option in accordance with the terms of the Mortgage and Note to accelerate the loan and declare the entire principal balance due under the Note." It may well be that Pope meant to reference the original plaintiff, Bank of America. However, as drafted, Pope's averment directly contradicts the attached copy of the Notice of Default, which indicates that it was sent by Bank of America and not Wilmington, the entity that is defined as and referred to as the "Plaintiff" in the Pope Declaration, and that Bank of America

(not Wilmington) sought to exercise its option to accelerate the loan and declare the principal balance due. In order for Pope to establish the admissibility of a document attached to her declaration, Pope must, at a minimum, accurately describe the contents of the document, particularly with the respect to which entity is responsible for having provided the requisite notice to Akehi. See, e.g., Bank of New York, Mellon v. St John, CAAP-17-0000436, 2018 WL 3135459, *3 (Haw. App. June 27, 2018) (SDO) (noting a declaration's incorrect assertion as to which entity created the documents attached to the declaration in addressing the document's admissibility).

Thus, the Notice of Default is not admissible through the Pope Declaration as evidence that Akehi was notified of the default, and Wilmington failed to otherwise establish the requisite notification in order to prevail on summary judgment. Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (1982). Accordingly, the Circuit Court erred in relying on the Notice of Default to establish the requisite notice, and, on remand, Wilmington will be required to present admissible evidence of such notice.

For these reasons, the Circuit Court's May 9, 2018 Judgment is vacated, and this case is remanded to the Circuit

Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawai'i, June 21, 2019.

On the briefs:

Gary Victor Dubin,
Frederick J. Arensmeyer,
Matthew K. Yoshida,
for Defendant-Appellant.

Charles R. Prather,
Skylar G. Lucas,
Peter T. Stone,
(TMLF Hawaii LLLC),
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge